**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NO:**

JANISA COOPER, and all others similarly
situated pursuant to 29 U.S.C. § 216(b),

    Plaintiff(s),

v.

HEALTH CADDIES INC.,

    Defendant.
_____/

## COLLECTIVE ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff, JANISA COOPER ("Plaintiff") on behalf of herself and all others similarly situated pursuant to 29 U.S.C. § 216(b), files this Collective Action Complaint for Damages and Demand for Jury Trial against Defendant, HEALTH CADDIES INC. ("Defendant"), and alleges:

## INTRODUCTION

1.    During periods within the past three (3) years, Defendant has employed numerous Insurance Sales Agents throughout the State of Florida. Defendant has intentionally and willfully misclassified these Insurance Sales Agents ("ISAs") as independent contractors from its headquarters in Delray Beach, Florida, to avoid federal overtime wage obligations under the Fair Labor Standards Act ("FLSA") and other federal tax liabilities. Defendant failed to pay Plaintiff and all other similarly situated ISAs applicable federal overtime wages pursuant to the FLSA during various workweeks within the previous 3 years when ISAs worked more than 40 hours in a workweek. Through this lawsuit, Plaintiff seeks to recover all federal overtime wages owed to these ISAs under the FLSA, 29 U.S.C. §§ 201–216.

**PARTIES**

2. During all times material hereto, Plaintiff was a resident of Broward County, Florida, over the age of 18 years, and otherwise *sui juris*.

3. During all times material hereto, Defendant was a Florida corporation located and transacting business in Palm Beach County, Florida, within the jurisdiction of this Honorable Court.

4. Defendant is headquartered at 14791 Whatley Road, Delray Beach, Florida 33445 and can be served through its registered agent, Peter Puccia, at this same address.

5. During all times material hereto, Defendant was vested with control and decision-making authority over the scheduling, hiring, firing, day-to-day operations, and pay practices that pertained to Plaintiff and the ISA collective.

6. During all times material hereto, Defendant also managed and controlled the work performed by Plaintiff and administered and enforced Defendant's pay practices and policies as they applied to the ISA employed within the past 3 years.

7. Defendant was Plaintiff's employer, as defined by 29 U.S.C. § 203(d), during all times pertinent to the allegations herein.

**JURISDICTION AND VENUE**

8. All acts and/or omissions giving rise to this dispute took place within Palm Beach County, Florida, which falls within the jurisdiction of this Honorable Court.

9. Defendant regularly transacts business in Palm Beach County, Florida, at 14791 Whatley Road, Delray Beach, Florida 33445, and jurisdiction is therefore proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337.

10. Venue is also proper within the Southern District of Florida pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1391(b).

## PLAINTIFF'S WORK FOR DEFENDANT

11. Defendant is headquartered in Delray Beach, Florida.

12. Defendant operates an insurance sales company that provides customers with several insurance plan options. Defendant employs ISAs to enroll customers in a suitable option that meets the customer's needs.

13. Defendant is not a "retail" business as defined under the FLSA and its accompanying regulations.

14. Plaintiff was employed by Defendant as an ISA from August 2023 through on or around January 24, 2024.

15. Defendant misclassified Plaintiff as an independent contractor at the inception of Plaintiff's employment to avoid paying federal overtime wage obligations and to further avoid federal tax liabilities.

16. Defendant maintained direct control and supervision over the work performed by Plaintiff and the Collective during their employment periods.

17. Defendant required Plaintiff and the Collective to utilize, and not deviate from, certain scripts prepared, created, approved, ratified, and/or endorsed by Defendant during sales calls.

18. In light of Defendant's requirement for Plaintiff and the Collective follow these scripts, Plaintiff and the Collective were not required to possess a specialized or unique technical skill in order to perform their primary duties.

19. Defendant retained control and supervision over work performed by Plaintiff and the Collective.

20. Defendant retained control and supervision over creation of work schedules for Plaintiff and the Collective.

21. Defendant required Plaintiff and the Collective to abide by Defendant's employee handbook of rules and regulations pertaining to expectations of work.

22. Defendant retained and enjoyed a benefit from work performed by Plaintiff and the Collective that was continuous and not sporadic.

23. Defendant imposed a requirement on Plaintiff and the Collective to work for a minimum of five hours per day, five days per week, which prevented Plaintiff and the Collective from working for other companies during these days and times.

24. Defendant controlled the times during which Plaintiff and the Collective could work. For example, Defendant set up the phone lines and computer systems utilized by the ISAs so that ISAs could only make calls to customers during certain hours, usually from 9:00 a.m. to 8:00 p.m.

25. Defendant therefore had express and/or constructive knowledge of work performed by Plaintiff and the Collective.

26. Defendant often commanded Plaintiff and the Collective to work as many hours as possible within these parameters, and directed Plaintiff and the Collective to complete as many sales as possible regardless of how long it took.

27. If Plaintiff and the Collective did not make enough sales or work enough hours, Defendant threatened them with termination of employment.

28. Defendant often disciplined Plaintiff and the Collective if they did not perform work for Defendant as directed. More specifically, Defendant, on occasion, would penalize Plaintiff and the Collective by shutting them out of Defendant's systems for multiple hours at a time and preventing Plaintiff and the Collective from making calls and/or sales if they were not fully meeting Defendant's expectations.

29. Defendant required Plaintiff and the Collective to attend company-wide meetings via video teleconference to discuss Defendant's rules and regulations, as well as Defendant's expectations regarding day-to-day work performed by Plaintiff and the Collective.

30. Defendant utilized these video teleconferences because it uniformly applied its policies to all ISAs it employed.

31. Defendant provided Plaintiff and the Collective with desktop computers, keyboards, headsets, and all other equipment and the necessary to complete their job duties.

32. The work performed by Plaintiff and the Collective was essential and critical to the success of Defendant's operation.

33. Defendant exercised a high level of control and supervision over worked performed by Plaintiff and the Collective.

34. The economic realities of the work relationship between Plaintiff, the Collective, and Defendant, demonstrate that Plaintiff and the Collective were employees of Defendant and not independent contractors.

35. During her employment period, Plaintiff regularly worked between forty-five (45) and fifty (50) hours per week.

36. Since Defendant began operations in July 2021, Defendant has not paid Plaintiff, or the Collective, federal overtime wages when they worked more than forty (40) hours in a workweek.

## **COLLECTIVE IS COMPRISED OF SIMILARLY SITUATED MISCLASSIFIED INSURANCE SALES AGENTS**

37. During time periods within the previous three (3) years, Defendant enacted and enforced a company-wide policy in which it misclassified Plaintiff and other similarly situated ISAs as independent contractors in an effort to avoid federal overtime wage obligations and federal tax liabilities.

38. Defendant implemented and enforced this company-wide policy against Plaintiff and similarly situated ISAs regardless of where they performed work in Florida.

39. Defendant specifically authorized and/or directed Plaintiff and similarly situated ISAs to work more than forty (40) hours in a workweek.

40. Defendant did not compensate Plaintiff and similarly situated ISAs proper federal overtime wages for this work.

41. Moreover, Defendant was aware that Plaintiff and similarly situated ISA's worked in excess of forty (40) hours in one or more workweeks.

42. Accordingly, Plaintiff seeks to represent the following Misclassified Employee Collective of similarly situated individuals:

> **All Insurance Sales Agents employed by Defendant in Florida during the previous three (3) years who were misclassified as independent contractors and worked more than forty (40) hours in a workweek.**

43. Defendant treats Collective members equally and similarly in that they were misclassified as independent contractors and were denied proper federal overtime wages as a result

of Defendant's unlawful policy which fails to compensate non-exempt ISA's statutory overtime wages when they work more than forty (40) hours per week.

44. Defendant's pay policies uniformly lead to federal overtime wage violations with respect to each and every ISA who worked in excess of forty (40) hours per week. For example, regardless of payment method, whether hourly plus commissions or commissions only, all ISAs are similarly situated because all of them were subject to the same uniform misclassification and none of them received overtime pay.

45. Defendant has employed dozens of ISAs throughout Florida who were not paid federal overtime wages in accordance with the FLSA and pertinent federal regulations.

46. Plaintiff and similarly situated ISAs were subjected to the same unlawful employment policies during the previous three (3) years.

## **FLSA COVERAGE**

47. Defendant is covered under the FLSA through enterprise coverage, as Defendant was engaged in interstate commerce during all pertinent times in which Plaintiff was employed. More specifically, Defendant engaged in interstate commerce through its business activities that involved those to which the FLSA applied. Defendant's business and Plaintiff's work for Defendant affected interstate commerce because the materials and goods that Plaintiff used on a constant and/or continuous basis moved through interstate commerce prior to or subsequent to Plaintiff's use of the same.

48. During her employment with Defendant, Plaintiff, and various other similarly situated employees, handled and worked with various goods and/or materials that moved through interstate commerce, including, but not limited to the following: extension cords, keyboards, desktop computers, online phone systems, computer monitors, cables, pens, paper, pencils, etc.

49. Defendant also regularly employed two (2) or more employees for the relevant time period, who handled the same or similar goods and materials handled by Plaintiff, thus making Defendant's business an enterprise covered by the FLSA.

50. Defendant grossed or did business in excess of $500,000.00 in the years 2021, 2022, 2023, and is expected to gross in excess of $500,000.00 in the year 2024.

51. During her employment with Defendant, Plaintiff and the Collective were regularly and recurrently engaged in an instrumentality of interstate commerce and subject to individual coverage, as that term is defined by the FLSA. More specifically, Plaintiff and the Collective used the interstate telephone system to speak with Defendant's customers regularly and recurrently over the phone who, at times, resided out of the state of Florida.

52. Plaintiff and the Collective also regularly and recurrently sent and received correspondences to and from Defendant's customers and potential customers outside of Florida during her employment period.

53. During their employment with Defendant, Plaintiff and the Collective: (i) performed non-exempt work; (ii) did not have any supervisory authority over any individuals; (iii) did not make any decisions of importance on behalf of Defendant; (iv) were not required to possess any advanced training, skill, or prolonged education in order to perform any of their primary duties and responsibilities; (v) were economically dependent on Defendant for work; and (vi) were under the direct supervision and control of Defendant.

54. During all times material hereto, Plaintiff was a non-exempt employee of Defendant, within the meaning of the FLSA.

## **COUNT I – FEDERAL OVERTIME WAGE VIOLATIONS – 29 U.S.C. § 207**
**(Misclassified Employee Collective)**

55. Plaintiff hereby re-alleges and re-avers Paragraphs 1 through 54 as through set forth fully herein.

56. Plaintiff alleges this Collective Action Complaint pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

57. Plaintiff intends to seek conditional certification of the Misclassified Employee Collective ("MEC").

58. Defendant enforced a company-wide policy that failed to compensate ISA's (including Plaintiff) when Defendant required these ISAs to work more than 40 hours in a workweek during the previous three (3) years.

59. Defendant refused to pay Plaintiff and all other similarly situated ISA's one-and-one-half times the applicable regular hourly rate for all hours worked over forty (40) in one or more weeks of their employment.

60. Plaintiff seeks certification under 29 U.S.C. § 216(b) of the following similarly situated Collective for Defendant's failure to pay federal overtime wages:

> **All Insurance Sales Agents employed by Defendant in Florida during the previous three (3) years who were misclassified as independent contractors and worked more than forty (40) hours in a workweek.**

61. Plaintiff claims the applicable federal overtime wage rate for all of the unpaid hours over forty (40) that she worked during her employment period.

62. Defendant's failure to comply with the FLSA was willful and/or intentional.

63. Defendant's failure to comply with the FLSA was willful and/or intentional because Defendant knew or should have known of the FLSA's federal overtime wage requirements as they

9

apply to ISA's and disregarded same. Defendant indicated its knowledge and awareness of wage and hour requirements but nevertheless refused to comply with these requirements.

64. Furthermore, when Defendant decided to enforce its unlawful misclassification policy concerning federal overtime wages, it could have easily accessed publicly available information from the Department of Labor through the available DOL Fact Sheets (at no cost to Defendant) concerning the overtime wage requirements under the FLSA but failed to do so.

65. Defendant knew Plaintiff and all similarly situated ISAs worked over forty (40) hours in at least one workweek, but willfully implemented and enforced its policy of failing to pay Plaintiff and the Collective federal overtime wages, contrary to the FLSA.

66. As a direct and proximate result of Defendant's deliberate underpayment of wages, Plaintiff and the Collective have been damaged in the loss of federal overtime wages for one or more weeks of work during their employment with Defendant.

67. Defendant's willful and/or intentional violations of federal wage law entitle Plaintiff to an additional amount of liquidated, or double, damages, because Defendant cannot establish any subjective and/or objective good faith basis for why they committed these violations.

68. Moreover, because of Defendant's willful and/or intentional violations of the FLSA, the statute of limitations in this action should be three (3) years as opposed to two (2) years.

WHEREFORE, Plaintiff, JANISA COOPER, respectfully requests that this Honorable Court enter judgment in her favor and against Defendant, HEALTH CADDIES INC. and award Plaintiff: (a) unpaid federal overtime wages; (b) liquidated damages; (c) reasonable attorney's fees and costs; and all such further relief as deemed just and reasonable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, JANISA COOPER, hereby demands a trial by jury on all appropriate claims on behalf of herself and all others similarly situated.

**Dated: March 12, 2024**

Respectfully Submitted,

**USA EMPLOYMENT LAWYERS –
JORDAN RICHARDS, PLLC**
1800 SE 10th Ave, Suite 205
Fort Lauderdale, Florida 33316
Tel: (954) 871-0050
*Co-Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
Jordan@JordanRichardsPLLC.com
Michael@USAEmploymentLawyers.com
Sarah@USAEmploymentLawyers.com
Intake@USAEmploymentLawyers.com
LawClerk@USAEmploymentLawyers.com
Charles@USAEmploymentLawyers.com

**EGGNATZ PASCUCCI, P.A.**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
*Co-Counsel for Plaintiff*

By: */s/ Joshua H. Eggnatz*
JOSHUA H. EGGNATZ, ESQUIRE
Florida Bar No. 006726
JEggnatz@JusticeEarned.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing document was filed via CM/ECF on March 12, 2024.

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372

## SERVICE LIST